W. SHARP, Judge.
Richard E. Mauck appeals from a dissolution judgment which ended his 13-year marriage to Kimberly K. Mauck. He argues that the court’s equitable distribution -of the parties’ marital assets and liabilities is erroneous, and its award of permanent alimony, child support and attorney’s fees place him in economic peril and constitutes an abuse of discretion. We agree.
This is an extreme ease involving hotly contested facts concerning the circumstances of the parties’ separation, Richard’s unilateral disposition of the parties’ marital assets, and his unilateral assumption of excessive debt. The trial court made meticulous findings on these matters, which are supported by competent evidence. Under these circumstances, we must accept the trial court’s resolution of the disputed issues of fact.[1]
The trial court found Kimberly’s testimony was credible, and that Richard’s was “incredible,” and that his explanations made “no sense whatsoever.” The parties were married for 13 years. Two minor sons were born. Kimberly and Richard married while they were in college. Kimberly dropped out of school and worked while Richard obtained his college degree. He became a loan officer for Barnett Bank and earned $33,000 per year, in 1993. Kimberly earned $22,000. They lived a comfortable, middle class lifestyle, owning a 3-bedroom home in Lake Mary, two cars, two classic cars, and two jet skis.
However, Kimberly developed a heart condition related to stress, and had to quit her job. They sold their home and moved into a rental house in DeBary. At this point, the account of why the parties separated and what happened to their marital properties dramatically diverges.
*1312 Kimberly testified they intended to move back to West Virginia, their original home. Richard had interviewed for a job with a bank there, and intended to relocate when he got a job offer. He drove Kimberly and the two boys to West Virginia, so she could find an apartment and find a job. She packed only clothes, a few toys, and household items, which would serve on a temporary basis. Richard left his family in West Virginia and returned to Florida with the car.
After a short time, Richard called to advise Kimberly he had no intention of moving to West Virginia, and that he was filing for a divorce. The trial court described this as Richard having tricked Kimberly into moving to West Virginia without a ear or her marital household possessions. Richard then began to sell or dissipate the parties’ personal properties. He sold the classic cars and both cars the parties had used. He sold a jet ski worth $5,500 to a friend ■ for $4,500; and disposed of $14,500 worth of household assets. He purchased a new van and a new jet ski, doubling the total amount of debt owed from $26,400 to $58,000.
Out of the $14,500 of joint assets Richard disposed of, the court found that Kimberly received only $2,500. She had to incur $3,800 in debt to replace her household goods, and spent $2,900 as down payment on a new car she should not have had to buy. She also paid $800 to renovate a 3-bedroom house she was renting for herself and the children.
At the time of the dissolution hearing, Kimberly was unemployed, but she had worked briefly in West Virginia earning a net income of $862.00 per month. It was less than she had earned in Florida but she testified there were no similar high-paying jobs available in West Virginia. She could not take. a stressful job because of her. heart condition, a rapid heart beat, which required her to be on medication.
Richard was earning a net income of $2,447.00 per month. He was in good health, and had no dependents other than Kimberly and the children. He was a successful loan officer with Barnett Bank, with a promising career.
Equitable Distribution
The court awarded each party the properties then in their possession, aside from a small amount of stocks and bonds, which it split equally ($1,000 to each), as well as Richard’s vested interest in the Barnett Retirement Pension Fund ($5,570 to each). Thus, Richard received the new van ($20,000), jet skis ($9,500), and personal property ($2,500). Kimberly was awarded the car she bought in West Virginia ($6,000), and $5,000 in personal property. It also attached to each party the liabilities, which financed the assets awarded to the party, and credit card debt each incurred after they separated: to Richard, van debt ($24,500), jet ski ($12,500), credit cards ($21,000); to Kimberly, car debt ($6,608), and credit card debts ($9,000).
In addition, the court ordered Richard to pay Kimberly $8,750 as her share of the marital property which it found Richard had dissipated. This sum was to be paid to her within 60 days.
We have no problem with affirming this equitable distribution award in all regards, except for the compensating amount awarded to Kimberly. The court may have duplicated Kimberly’s award, in part, based on its findings that Richard retained or disposed of $14,500 worth of their joint assets, and gave Kimberly only $2,500.
Both parties testified their household property was worth $17,000. One half of that figure is the amount awarded $8,750. But it may not take into account the $2,500 which the court found Richard gave to Kimberly. Nor does it explain whether those figures also include the $5,000 in personal property which Kimberly received in the equitable distribution award. The latter figure could be new furnishings Kimberly purchased in West Virginia. Hbwever, it appears the $8,750 figure perhaps should be reduced by $2,500.
Child Support and Alimony
The trial court made sufficient findings relating to Richard’s net income and Kimberly’s imputed net income to justify the $748 per month child support award for the two minor children. For a time, the obligation will be $50 more, per month, since Richard paid no support pending the divorce, and the award was made- retroactive to date of filing, creating an arrearage.
*1313 Similarly, the court made findings which support an award of permanent alimony to Kimberly; a 13-year marriage, her substantial contribution to the marriage and Richard’s career, her lack of a college degree and inability to earn sufficient sums to approach the parties’ prior lifestyle, her need to raise the 2 children, and her health condition. It awarded her $500 per month retroactive to the date of filing, with $100 per month to be paid on the arrearage.
In addition, Richard was required to pay $125 per month for medical insurance for the boys, and to maintain a life insurance policy in the amount of $82,000 minimum to secure the alimony and child support obligations. No cost figure appears in the record for that obligation.
These are heavy obligations Richard must carry. They exceed more than one-half his net income, even after the arrearages are paid off, and they do not take into consideration the cost to maintain the required life insurance policy, or debt service on part of the joint marital debt which the parties incurred prior to their separation.
Kimberly’s Monthly Net Income
Alimony o o LO
Arrears o o H
Child Support: 748
Arrears 50
$1,398
Plus Kimberly’s Imputed Net 862
Earned Income $2,260
Richard’s Net Monthly Income
Richard s Net Earned Income $2,447
Expenses to Kimberly 1,398
Medical Insurance ^ <N OH 7 — I <30- CO
$ 924
There was no dispute in the record concerning the parties’ net incomes. Based on that circumstance, we conclude these obligations place Richard in a perilous economic situation. They are beyond his ability to pay. Chereskin v. Chereskin, 665 So.2d 1133 (Fla. 5th DCA 1996); Sheiman v. Sheiman, 472 So.2d 521 (Fla. 4th DCA 1985), rev. denied, 486 So.2d 597 (Fla.1986). Thus these awards are an abuse of discretion, even though we do not overturn the trial court’s findings that Richard was at fault in causing the failure of the parties’ marriage, and that he dissipated their marital assets.
Attorney’s Fees
The court awarded Kimberly attorney’s fees in the amount of $6,000 payable at $200 per month. It found that Richard was in a “superior” financial position than Kimberly and that he had caused additional litigation expenses unnecessarily. If the support and alimony awards are unchanged, it appears the parties are not equal. Indeed, Richard’s financial situation is much worse than Kimberly’s. If on remand the parties’ net incomes are roughly equal, attorney fees should not be awarded,[2] unless by way of a penalty for causing excessive litigation costs to Kimberly. This circumstance should be supported by express fact findings.
Accordingly, we remand this cause for further consideration by the trial court of the equitable distribution award, the totality of the support and alimony award, and the attorney’s fee award.
REVERSED and REMANDED.
HARRIS and ANTOON, JJ., concur.

. Marshall v. Johnson, 392 So.2d 249 (Fla.1980) (appellate court may not reweigh evidence and substitute its judgment for that of the trier of fact); Espino v. Anez, 665 So.2d 1080 (Fla. 3d DCA 1995) (appellate court may not reweigh evidence and credibility of witnesses).

. Castillo v. Castillo, 626 So.2d 1035 (Fla. 3d DCA 1993) (no attorney’s fee award where parties in substantially equal financial position even though one party earning twice as much as other).